In re **LEDGEMERE LAND CORP., Greenhouse Acres Development, Inc., Marine Charter and Storage Ltd., Inc., H.A. Fafard & Sons Construction, Inc., Howard A. Fafard, Debtors.**

Bankruptcy Nos. 90–40962, 90–40964, 90–40965, 90–40967 and 90–40968.

United States Bankruptcy Court, D. Massachusetts.

July 19, 1990.

Harold Murphy, Hanify & King, Boston, Mass., for debtors.

David Phalen, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for the First Nat. Bank of Boston.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Howard A. Fafard (the "Debtor") moves for an order directing First National Bank of Boston (the "Bank") to turnover to him the rents it has collected. He also requests that the Bank be barred from collecting rents in the future. By separate motion, the Bank asks the court to abstain from hearing the matter so that it may continue the litigation pending between the parties in state court.

## I. FACTS

The material facts are undisputed. The Debtor is the owner and developer of property known as Highlander Shopping Plaza, in Salem, Massachusetts. On or about February 7, 1989, the Debtor entered into an agreement with the Bank for a construction loan of up to $14,300,000, executing a note, a mortgage, a general assignment of leases, and estoppel certificates, which were also signed by tenants. At that time there was but one tenant on the property, Highland Plaza CVS, Inc. ("CVS"). In contemplation of a planned expansion of the plaza, the Debtor had previously signed a lease with Shaw's Supermarkets, Inc. ("Shaw's"). The plans also called for the construction of a restaurant and so-called "strip" buildings. In April of 1990, the Debtor completed the Shaw's building, and Shaw's took occupancy.

At that point, sparks began to fly. The construction loan is apparently but one of several loans which were then the subject of intense "workout" discussions between the parties. On April 6, 1990, the Bank declared a default under the construction loan because of the Debtor's failure to pay interest commencing in March. On April 20th and 27th, respectively, the Bank made written demand upon Shaw's and CVS to commence paying rent to it. The Debtor protested this action to the tenants, asserting that the Bank had no right to receive rents without having taken possession of the property. CVS and Shaw's nevertheless paid the May rent to the Bank. The Debtor countered with a threat to evict them.

Shaw's then brought suit in state court against the Debtor and the Bank, seeking a judgment declaring which party had the right to receive rents and an injunction against the Debtor bringing eviction proceedings pending issuance of the declaratory judgment. The state court granted the requested preliminary injunction, permitted the June rent to be paid to the Bank, and scheduled a further hearing on the ques-

tion of who was entitled to future rents, directing the parties to address the issue of possession raised by this court's decision in *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289 (Bankr.D.Mass. 1988). The filing of the Debtor's Chapter 11 petition on June 15th then intervened. CVS and Shaw's have suspended payment of further rent pending the outcome of the present motions.

Both parties claim to have been in possession of the premises during April, May and June. The premises consist of two stores open to the public and a parking lot designed for use by their customers. The Debtor has been present on the property throughout the period in connection with his ongoing construction work. He has also conducted activities in his capacity as landlord. This has been done through his commercial property manager, K. Scott Griggs, who is responsible for day-to-day contact with CVS and Shaw's. Since April of 1990, Griggs has resolved tenant concerns pertaining to rubbish disposal, rodent control, fertilizer and weed control treatment, severing of electrical service from the construction trailer, and landscaping.

The Bank has also been active. On April 25, 1990, it made a peaceable entry upon the premises, recording a certificate of the entry with the registry of deeds. It notified the Debtor of the entry during the course of a hearing in the state court on May 29th. In June it retained The Drucker Company, which is in the business of managing commercial properties. Thomas Frawley of The Drucker Company has met with the managers of CVS and Shaw's to hear any complaints about the condition of the premises and their management. The manager of CVS complained to him about the absence of re-striping of the parking lot, and the manager of Shaw's voiced displeasure with the need to have its employees clean the area in front of the Shaw's

store. Frawley has requested an estimate from a third party for the re-striping job. Upon the Debtor learning of Frawley's activities, its counsel wrote to counsel for the Bank on June 13th protesting Frawley's activities. There matters stood at the time of the filing of the Debtor's Chapter 11 petition.

## II. PROCEDURE—CASH COLLATERAL RIGHTS

■ The Debtor's motion is entitled "Emergency Motion to Compel Turnover of Rents," and seeks a return of the May and June rents paid to the Bank. Relief in the form of a money judgment, however, may only be sought in a complaint which commences an adversary proceeding. B.R. 7001. The Bank would presumably seek to setoff the claim against its debt, which it in effect has already done by applying the collected rents to its debt, so that arguably the claim is moot.[1]

The Debtor's motion also requests that the Bank be barred from collecting rents in the future. Implied is a request for authorization to collect and use rents. Rents are "cash collateral," 11 U.S.C. § 363(a), which a mortgagor may use over the objection of the mortgagee only if authorized by the court. 11 U.S.C. § 363(c)(2)(B). When a party having an "interest in property" objects to its use, he is entitled to have the use prohibited or conditioned "as is necessary to provide adequate protection of such interest." § 363(e). The parties have fully briefed and argued the nature of the bank's interest in rents, and the relationship of that interest to the question of who is entitled to collect and use the rents, citing decisions dealing with cash collateral rights. I therefore treat the Debtor's motion as a request for authorization to collect and use rents.

---

1. In Massachusetts, a secured party may effect a setoff if he reasonably believes at the time of setoff that his security, when reduced to cash, will fall short of his debt by at least the amount of the setoff. *Saugus General Hospital, Inc. v. Sisk*, 698 F.2d 42 (1st Cir.1982). In seeking to effect a setoff, the Bank would probably wish to apply the rent claim to accrued interest in order to maximize future accrual of interest. An undersecured claim ceases to accrue interest upon the petition filing date. 11 U.S.C. §§ 506(b), § 502(b)(2). The interest which had accrued on the Bank's debt up to the petition filing date may be in excess of the rents collected for May and June.

## III. POSSESSION BY MORTGAGEE AS CONDITION TO RIGHT TO RENTS

In *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289 (Bankr.D. Mass.1988), this court concluded that under Massachusetts law an assignment of rents grants only an inchoate right to collect the rents until the mortgagee takes possession of the property. I therefore held that because the mortgagee was not in possession at the Chapter 11 petition filing date it could not have been deprived of adequate protection of its interest in cash collateral by being denied the rents. I also observed that even a mortgagee in possession may be denied rents if its entire mortgage interest, including the rents, has adequate protection. The decision is a lengthy one, perhaps too lengthy, and no attempt will be made here to repeat its analysis in full.

The collection of rents following a declared default is an obvious act of foreclosure, so that it must be consistent with Massachusetts law regulating foreclosure. There are four methods of foreclosure in Massachusetts: (1) sale under power of sale contained in the mortgage (Mass.Gen L. ch. 244, §§ 11–17C); (2) "open and peaceable entry ... if not opposed by the mortgagee ... and possession so obtained, if continued peaceably for three years ...," followed by recording of a certificate of the initial entry within thirty days of entry (Mass.Gen.L. ch. 244, §§ 1 & 2); (3) possession obtained by court order if "continued peaceably for three years" (Mass.Gen.L. ch. 244, §§ 1, 4–10); and (4) bill in equity under Mass.Gen.L. ch. 185, § 1(k). *See Negron v. Gordon*, 373 Mass. 199, 202 n. 4, 366 N.E.2d 241, 245 n. 4 (1977). In *Prichard Plaza*, I observed that considerations of equity and practicality support a literal reading of the requirement of possession under Mass.Gen.L. ch. 244, § 1. A mortgagee out of possession does not perform the management and maintenance work necessary to maintain rents. And his lack of possession necessarily causes confusion on the part of tenants concerning who they should pay, virtually ensuring that neither mortgagor nor mortgagee will receive a full and uninterrupted flow of rent.

The Bank says that this case is different from *Prichard Plaza*, that its entry upon the premises and the activities of The Drucker Company on its behalf gave it a present right to the rents. I think not. The Bank's entry upon the premises, even though "open and peaceable," is not enough. The statute requires that the entry be followed by "possession ... continued peaceably ..." What followed its entry could hardly be called peaceable, with threats of eviction, disputes over who should receive rents, and, finally, litigation. Perhaps most important, the Bank was never in possession of the property within the meaning of Mass.Gen.L. ch. 244, § 1. Possession is one of the more slippery concepts in the law, made more so here by the public nature of these premises. It nevertheless must approach a degree of exclusivity which is lacking here. The Debtor's activities as landlord continued unabated through the entire period. The Bank, on the other hand, waited for about six weeks following its entry of April 25th before hiring an agent to manage the premises. In addition to being late, that hiring seems a contrived attempt to follow the dictates of *Prichard Plaza*, which the state court judge had directed the parties to address at the next scheduled hearing.

The Bank further contends that it obtained the right to receive rents from its single entry upon the premises on April 25th, without the need for possession thereafter. It says that under Massachusetts law the possession necessary for foreclosure is not required as a condition to the right to receive rents. This is certainly partly true. To accomplish foreclosure by possession, the mortgagee must continue in possession for three years. Obviously, during that period the mortgagee should be entitled to collect rents even though he terminates his possession prior to the end of the three years as the result, for example, of a foreclosure sale. But it makes no sense to conclude that mere entry, not followed by possession, creates rental rights. It is clear that the possession referred to in the foreclosure statutes is actual possession, not constructive possession as suggested by the Bank. The provisions for

court-ordered possession have no meaningful application to the concept of constructive possession. Collection of rents is an act of foreclosure—a process regulated by statute. The only purpose of the entry is to commence foreclosure by possession under the statute.

The decisions affirming mortgagee rental rights cited by the Bank do not hold otherwise. They involve situations where possession was not disputed and the mortgagee simply failed to give notice of entry to the mortgagor, as then required by statute. Indeed, they emphasize maintenance of possession by the mortgagee. *See, e.g., Welch v. Adams,* 1 Metc. 494, 496 (1840) ("An entry by a mortgagee, without notice to the mortgagor, is a legal entry, and will authorize *the retaining of the possession* and the taking of rents and profits ..." (emphasis added); *Shepard v. Richards,* 2 Gray 424, (1854) (mortgagee allowed to retain apples he picked after entry, with court stating: "[b]eing in possession under a legal title and seizin, he had the right to the perception of his share of the rents and profits").

The possession necessary to collect rents under the assignment of rents is therefore lacking. The Bank could have obtained a court order placing it in possession. Retention of possession following such an order would presumably be "continued peaceably" within the meaning of the statute. Circumstances would then have been presented which would be comparable to the appointment of a receiver, a proceeding which many states require as a condition precedent to the right to rents. *See Prichard Plaza* at 294–5. The Bank chose instead to create a situation of chaos involving disputes over both management rights and rent entitlement. It argues that this should be approved, as a matter of public policy, in order to promote long-term workout plans between mortgagors and mortgagees. This borders on sophistry.

## IV. THE LOAN DOCUMENTATION

### A. *Assignment of Leases and Rents*

■ The loan documents themselves require that the Bank take possession in order to collect rent. The general assignment of leases and rents repeatedly links collection of rents with possession. Following a default, the Bank is authorized "to enter upon the Mortgaged Premises and to collect ... the rents ... [and] ... to take over and assume the management, operation and maintenance of the Mortgaged Premises ... and to expend such sums out of the income of the Mortgaged Premises, as the [Bank] may deem advisable ..." If a default is cured, "the [Bank] ... shall redeliver possession unless and until another default occurs ... at which time [Bank] may, at its option, again take possession of the Mortgaged Premises ..." In sum, the parties agreed that the Bank would collect rents only while it was in possession.

### B. *Estoppel Certificates*

■ The Bank lays great stress upon the so-called "estoppel" certificates signed by Shaw's and CVS, and joined in by the Bank and the Debtor. They provide in pertinent part:

7. Upon receipt of notice from the Bank that there is a default in the terms and conditions of said Mortgage or Note secured thereby, Lessee will pay to Bank the rent and charges due pursuant to said Lease to Lessor therein until further notice from the Bank that said default has been cured and HOWARD A. FAFARD has joined in this agreement for the purpose of consenting to the Bank's rights set forth in this section 7.

The Bank points out that the tenants thereby promised to make payment to the Bank conditional only upon receipt of the Bank's notice of default, with no mention of possession. That agreement having been consented to by the Debtor, says the Bank, the parties should be bound by it.

There are two flaws to this argument. First, the estoppel certificate, like the general assignment of leases and rents, deals with rights and obligations which are regulated by statute. The assignment grants collection rights to the Bank as a third party assignee; the estoppel certificate gives it collection rights as a direct promisee. Both instruments must be viewed in

light of the statutory requirements for foreclosure.

Second, the estoppel certificates should not be read in isolation from the general assignment of rents and leases. Dealing with precisely the same subject—collection of rents following default—and having been executed as part of the same construction loan transaction, the estoppel certificates and assignment should be read together. *Phoenix Spring Beverage Co. v. Harvard Brewing Co.*, 312 Mass. 501, 45 N.E.2d 473 (1942). When so read, the requirement of possession, which so clearly appears in the assignment, retains its force.

### C. *Public Policy*

Public policy considerations may prohibit a mortgagor from agreeing to give the mortgagee rent collection rights when not in possession. Although the mortgage foreclosure statutes do not prohibit this, they do prohibit a mortgagor from waiving the rights given him with respect to a suit to recover a deficiency after foreclosure. *See* Mass.Gen.L. ch. 244, § 17A–17C. Under the Uniform Commercial Code, adopted in Massachusetts, a debtor in a security agreement covering personal property is prohibited from waiving his basic foreclosure rights. Mass.Gen.L. ch. 106, § 9–501(3). In view of the parties' agreement here, I need not decide whether principles of Massachusetts common law, perhaps with guidance from these statutes, would render an agreement dispensing with possession void on grounds of public policy.

### V. ADEQUATE PROTECTION IN GENERAL

■ It does not necessarily follow that even with possession the Bank would be entitled to receive these rents. As observed in *Prichard Plaza*, resolution of the question of adequate protection should focus on the mortgagee's entire property interest, not just his interest in rents. Cash collateral rights in rents are similar to cash collateral rights in proceeds of receivables, particularly where the security interest also encompasses all of a debtor's operating assets. Under such a security arrangement, the creditor is considered to have adequate protection so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest. In these circumstances, net operating income, which is comparable to net rental revenues, remains stable, so that the secured claim is not declining in value. Permitting the secured party to collect that income draws the life blood from the collateral. If the value of the Bank's secured claim were declining, it would lack adequate protection. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Andrew J. Lane*, 108 B.R. 6 (Bankr.D.Mass.1989). A debtor's failure to apply sufficient rental income to maintenance of the property might well bring about a decline in the value of the property, causing a corresponding decline in the value of an undersecured claim. But a mortgagee's inability to collect rents and apply them to its secured claim does not cause such a decline. It is much like a mortgagee's inability to realize immediate payment through a foreclosure sale, an inability which *Timbers* held did not constitute deprivation of adequate protection.

The Bank may, if it wishes, raise the issue of adequate protection of its secured claim by a motion seeking modification of the automatic stay. This is the same issue that would have been presented had it taken possession of the premises. The Debtor would then have been entitled to redelivery provided that loss of possession would not deprive the Bank of adequate protection. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

### VI. CONCLUSION

Due to its lack of possession, the Bank had no right to collect rents prior to the Chapter 11 filing, so that the Debtor's use of rents in Chapter 11 could not deprive it of adequate protection of its interest in them. Separate orders have issued grant-

ing to the Debtor the exclusive right to collect and use rents, denying without prejudice the Debtor's request for a turnover, and denying the Bank's motion for abstention. The orders are without prejudice to the Bank's right to request relief from the automatic stay so as to foreclose upon its mortgage. That motion, if brought, will squarely present the issue of the Bank's adequate protection of its entire mortgage interest. Today's orders, therefore, are not final orders. Until further order of court, however, the Debtor has the exclusive right to collect and use rents, commencing with the July rents now overdue.

### ORDER

Upon the motion of Howard A. Fafard (the "Debtor") for an order directing First National Bank of Boston (the "Bank") to turnover rents which it has collected, and barring the Bank from collecting rents in the future, the court having issued a separate opinion containing findings of fact and conclusions of law, it is hereby

ORDERED, that

1. The Debtor's motion for a turnover of rents is DENIED, without prejudice to his right to bring an adversary proceeding; and

2. The Debtor is granted the exclusive right to collect and use rents due now and in the future from all tenants at Highlander Shopping Plaza, Salem, Massachusetts, including rents now overdue from Highland Plaza CVS, Inc. and Shaw's Supermarkets, Inc. for the month of July, 1990.