In re CONCORD MILL LIMITED PARTNERSHIP, Debtor.

Bankruptcy No. 90–16383–CJK.

United States Bankruptcy Court, D.Massachusetts.

Feb. 21, 1992.

William R. Moorman, Jr., Boston, Mass. for debtor.

Kevin J. Simard, Boston, Mass. for Bay-Bank.

## MEMORANDUM OF DECISION ON MOTION OF BAYBANK HARVARD TRUST COMPANY FOR TURNOVER OF CASH COLLATERAL

CAROL J. KENNER, Bankruptcy Judge.

BayBank Harvard Trust Company ("Bay-Bank"), as the holder of a collateral assignment of the Debtor's leases of its nine commercial condominium units, has moved for an order directing the Debtor to turn-over all monies currently deposited in its Debtor–in–Possession account and to provide an accounting of its Chapter 11 income and expenditures. BayBank argues that it is entitled to turnover of the monies because they constitute rents in which Bay-Bank has a perfected security interest. The Debtor and its bankruptcy counsel, Craig & Macauley Professional Corporation, in its capacity as an administrative creditor of the Debtor's bankruptcy estate, oppose BayBank's motion and argue that BayBank has not taken the steps necessary to perfect its interest in the rents. The question presented is this: under Massachusetts law, what must an assignee of rents do in order to perfect its security interest in the rents? I hold that an assignee must at least make entry and give notice to tenants that it has entered and that rents are to be paid to the assignee. And I further hold that if possession is also required and the assignee refuses to cooperate and cede possession, the assignee's possession need not be peaceable and exclusive; rather, it is sufficient for the assignee to assert its right to possession.

### Facts

The facts are not in dispute. In 1984, the Debtor, to secure its obligation under a nonrecourse promissory note to BayBank in the original principal amount of $1,156,-000.00, gave BayBank both a mortgage and a collateral assignment of leases with regard to the Debtor's nine commercial condominium units. BayBank promptly recorded the mortgage and the assignment.

The assignment, whose most pertinent paragraphs are reproduced in the margin,[1]

---

1. The assignment includes the following pertinent language:

In consideration of Assignee's making the loan evidenced by the Note, in order further to secure the payment of the indebtedness of Assignor to Assignee and the performance of every obligation of Assignor herein, in the Note and in the Mortgage, Assignor hereby transfers and assigns to Assignee the entire lessor's interest in each of the leases set forth on Schedule B attached hereto and in all leases now or hereafter existing of portions of the Mortgaged Property, ... together with all rents, income and profits arising from each said lease, and together with all rents, income and profits for the use and occupation of the Mortgaged Property.

THIS ASSIGNMENT is made on the following terms, covenants and conditions:

1. So long as there shall exist no "Event of Default" as defined in the Mortgage, the Assignor shall have the right to collect at the time of, but not prior to, the date provided for the payment thereof, all rents, income and profits arising under each lease or from the Mortgaged Property and to retain, use and enjoy the same.

2. At any time after the occurrence [sic] any such Event of Default, Assignee, without in any way waiving such default, may, at its option, without notice and without regard to

provided that until the occurrence of an event of default, the Debtor ("the assignor") could collect rents as they came due and could retain, use, and enjoy them. However, the assignment also expressly provided that upon the occurrence of an event of default, BayBank ("the assignee") could (1) take possession of and manage the mortgaged property for as long as it deemed proper; (2) with or without taking possession, collect all rents, including those past due; and (3) apply the rents it collected to the expenses of managing the property and to the Debtor's indebtedness to BayBank in whatever order of priority BayBank in its sole discretion determined, any law to the contrary notwithstanding.

On October 3, 1990, after the Debtor's obligation to BayBank matured and while the Debtor was in default, BayBank notified each of the Debtor's tenants by letter that, thereafter, they were to make their rental payments to BayBank instead of to the Debtor. BayBank does not allege that it also entered on the Debtor's premises at that time.

Shortly thereafter, on October 30, 1990, the Debtor filed its petition under Chapter 11 of the Bankruptcy Code. Out of an abundance of caution and without conceding that the rents constituted cash collateral, the Debtor then moved for authority to use the rents. And, without determining whether the rents constituted cash collateral, this Court allowed the motion, but only to the extent necessary to pay the normal expenses of operating the property. The Court denied without prejudice BayBank's request that excess funds (rents in excess of operating expenses) be turned over to it.

BayBank moved for relief from the automatic stay and, on March 13, 1991, this Court allowed the motion and thereby granted BayBank leave to exercise its rights under the mortgage, the collateral assignment of leases, and applicable state law. BayBank then took the following steps. On March 29, 1991, over the Debtor's protests, representatives of BayBank entered upon six of the Debtor's nine condominium units.[2] On the same day, BayBank informed the tenants that it was the mortgagee-in-possession, directed them to make all rental payments to Weld Management, the management company that was to manage the property on behalf of BayBank, and executed and recorded a certificate of entry. Moreover, on April 1 and 9, 1991, BayBank obtained from the Massachusetts Superior Court first a Temporary Restraining Order and then a Preliminary Injunction. Together these (1) enjoined the Debtor from interfering with BayBank's rights to collect rents due on or after April 1, 1991, or from dissipating any rents due on or after April 1, 1991, but collected before that date, and (2) directed the ten-

---

the adequacy of the security for the indebtedness, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Mortgaged Property or any part thereof and have, hold, manage, lease and operate the same on such terms and for such period of time as Assignee may deem proper, and either with or without taking possession of the Mortgaged Property, in its own name, demand, sue for or otherwise collect and receive all rents, income and profits of the Mortgaged Property, including those past due and unpaid with full power to make, from time to time, all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Assignee and to apply such rents, income and profits to the payment of the following in such order of priority as to any of the items mentioned in this paragraph numbered "2" as Assignee in its sole discretion may determine, any statute, law, custom or use to the contrary notwithstanding:

(a) all expenses of managing the Mortgaged Property, ... and all expenses incident to taking and retaining possession of the Mortgaged Property; and

(b) the indebtedness of Assignor to Assignee together with all costs and attorneys' fees.

.    .    .    .    .

4. Upon payment in full of the indebtedness of Assignor to Assignee this Assignment shall become and be void and of no effect.

2. BayBank succeeded in entering upon units 3A–1, 3A–2, 3A–3, 3A–4, 3C, and 3D. BayBank also attempted to enter upon units 4A–2, 4A–3, and 5A–2, but the Debtor refused to grant BayBank peaceful entry to these units. The Debtor contends that none of BayBank's entries were peaceful or continuous, and, for purposes of this motion, the Court accepts this contention as established.

ants to pay rent to BayBank instead of to the Debtor.

On April 24, 1991, and on the Debtor's motion, this Court reconsidered its order granting BayBank relief from the automatic stay, vacated that order, reinstated the stay, and denied BayBank's motion for relief.[3] And on June 20, 1991, this Court directed the tenants to make their rental payments (past-due, present, and future) to the Debtor instead of to BayBank; and the Court directed the Debtor to hold and administer the rents in accordance with the earlier cash collateral order. BayBank later filed a second motion for relief from the automatic stay. The Court allowed the motion on September 25, 1991, and thereby permitted BayBank once again to exercise its state law rights under its mortgage and collateral assignment of leases. On October 4, 1991, BayBank again notified the tenants that it was in possession of the condominium units and that all rents should be paid directly to it. BayBank also reinstalled Weld Management as its management agent for the property and took responsibility for paying condominium fees, taxes, and other operating expenses incurred with respect to the property.

Finally, on October 17, 1991, BayBank foreclosed on the property. The proceeds of the foreclosure sale apparently have not fully satisfied BayBank's claim against the Debtor. Therefore, BayBank now seeks to apply the rents in which it asserts a security interest in satisfaction of its deficiency claim.

*Arguments*

BayBank argues that it has a perfected security interest in the rents because it properly recorded the assignment of leases, this alone being necessary to perfect its entitlement to rents. BayBank also argues that under recent Bankruptcy Court decisions in this district—*In re Milford Common J.V. Trust*, 117 B.R. 15 (Bankr.

D.Mass.1990), and *In re Ashford Apartments Limited Partnership*, 132 B.R. 217, 219 (Bankr.D.Mass.1991)—it is not necessary for an assignee to take actual possession to perfect its security interest in rents. Therefore it is sufficient that BayBank recorded its assignment and, before the Debtor filed its Chapter 11 petition, notified all tenants that it was exercising its rights pursuant to the assignment. In the alternative, BayBank argues that if this Court rules that possession is required, then BayBank's interest in the rents was perfected when it took possession on March 29, 1991, and BayBank is entitled to the rents collected since then.

The Debtor,[4] citing *In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988), and *In re Ledgemere Land Corp.*, 116 B.R. 338 (Bankr. D.Mass.1990), argues that perfection of an interest in rents under a collateral assignment of leases requires actual possession that is both peaceable and exclusive, which BayBank never attained. The Debtor further argues that even if the actions taken by BayBank while it enjoyed relief from the automatic stay—entering, giving notice to tenants, securing a preliminary injunction—sufficed to perfect BayBank's interest in the rents, those actions are void because the Court subsequently vacated its order granting BayBank relief from the automatic stay. And the Debtor also argues that even if BayBank is found to have perfected its interest in the rents, the Court should deny BayBank's motion for turnover on the basis of the "equities of the case" exception to 11 U.S.C. § 552(b).

*Discussion*

a. Prepetition Actions

Massachusetts law governing the perfection of security interests in leases and in rents is unsettled. The Massachusetts Supreme Judicial Court has not ad-

---

**3.** Because this Court reinstated the automatic stay, the parties' state court litigation over entitlement to the rents did not proceed beyond the initial motions for preliminary injunctive relief.

During the time that BayBank enjoyed relief from stay and the benefit of the Superior Court's orders, the Debtor did not relinquish possession of the property, so BayBank's possession was never peaceful or exclusive.

**4.** The arguments set forth in this paragraph are advanced also by Craig & Macauley.

dressed the issue,[5] and the United States Bankruptcy Judges for the District of Massachusetts, who see this issue regularly, have in recent decisions differed on what Massachusetts law requires.[6] Despite their differences, however, these decisions agree on at least two points. First, the underlying issue of whether and to what extent the assignee has a property interest in rents is, in the first instance, a matter of state law, not of federal bankruptcy law. See especially *Prichard Plaza*, 84 B.R. at 293–294. And second, under Massachusetts law, an assignee's interest in rents under a properly recorded collateral assignment of rents or of leases remains, if not unperfected, at least inchoate[7] until the assignee at least enters the property and gives notice of that fact to the tenants.

■ On both points, this Court agrees with and follows these decisions. Accordingly, I reject BayBank's argument that properly recording its assignment of leases sufficed to give it a right to collect the rents. Under a collateral assignment of leases or of rents—where the assignment is meant to serve as collateral—the assignor retains full rights with respect to the rents until the assignee exercises its right to collect the rents. The language of Bay-Bank's assignment is typical and clear on this point: "So long as there shall exist no 'Event of Default,' the Assignor shall have the right to collect ... all rents ... and to retain, use, and enjoy the same." The assignment does not require the assignor to retain and safeguard the rents for the benefit of the assignee. The assignor has full sovereignty over the rents; it is free to use and dispose of them as it sees fit. This is true with respect to any rents the assignor collects before the assignee exercises its rights (and, with respect to such rents—rents collected before the assignee exercises its rights—it remains true even after the assignee exercises its rights). By exercising its rights, the assignee effectively transfers the assignor's rights (to collect the rents and to use the rents it collects) to the assignee. But until this transfer occurs, the assignee has no protectable interest in accrued rents.[8]

Therefore, the assignee's recording of the assignment, without more, does not entitle it to the rents. The assignee must (at least) also enter onto the property, give notice of its entry to the tenants, and instruct the tenants to begin making their rent payments to the assignee instead of to the assignor.

■ BayBank does not allege that it entered onto the property before the Debtor filed its petition under the Bankruptcy Code. The only action it took at that time was to notify each of the Debtor's tenants by letter that, thereafter, they were to make their rental payments to BayBank instead of to the Debtor. Although sending such a notice is part of the process of "entering," standing alone it does not suffice. The assignee must make an actual physical entry onto the property. The physical entry is largely ceremonial, but the ceremony is nonetheless necessary as a recognized form of notice that, as of a date certain, the assignee has exercised its right to collect the rents.[9] BayBank does not

---

5. Massachusetts has no statutory law on point other than G.L. c. 183, § 4, which states that an assignment of rents shall not be valid—except against the assignor, those who take through the assignor, and those having actual notice of the assignment—unless the assignment is recorded in the registry of deeds of the county or district in which the land to which it relates lies.

6. See the four decisions cited in the above summary of the parties' arguments.

7. The difference between inchoate and unperfected, as these terms relate to security interests in rents and leases, is discussed in *Prichard Plaza*, 84 B.R. at 298.

8. Thus, if the assignor were to pay one of its creditors with rents collected before the assignee exercised its rights, the assignee would have no right to recover the rents from the creditor, even if the creditor had actual knowledge that the funds were rents and that the assignor had executed a collateral assignment of rents.

9. Since the ceremonial entry will not necessarily provide actual notice to those it is intended for—the debtor/assignor, its creditors, and the tenants—the physical entry should (as a matter of law) be supplemented by actual notice of the entry to the assignor and the tenants, and (as a matter of prudence) by recording a memorandum of the entry in accordance with G.L. c. 244, § 2.

purport to have entered the premises prepetition. Therefore, as of the commencement of this bankruptcy case, BayBank was not entitled to collect the rents.

### b. Postpetition Actions

■ After the Debtor filed its bankruptcy petition, BayBank enjoyed relief from the automatic stay for forty-two days. During that time, BayBank did enter upon the premises.[10] It also recorded a certificate of entry and gave actual notice to the Debtor and to the tenants that it had entered and was taking possession. It installed a management agent for the property. And it obtained a preliminary injunction requiring the tenants to pay their rent to BayBank and enjoining the Debtor from interfering with BayBank's right to collect the rents due on or after April 1, 1991. BayBank thus entered the property, asserted its right to possession, and took possession to the extent possible.

Although the Bankruptcy Courts in this district agree on the necessity of the assignee's entering and giving notice to tenants, they disagree on whether the assignee must also take possession of the property.[11] Since BayBank has taken possession of the property, this Court need not decide whether an assignee must also take possession. Despite the Debtor's failure to cooperate and to cede exclusive possession to BayBank, BayBank did at least as much as was necessary to entitle it to receive the rents due and received on and after April 1, 1991.

■ There is disagreement in this district as to whether the assignee's possession must be peaceable and exclusive. Compare *In re Ledgemere Corp.,* 116 B.R.

338, 341 (Bankr.D.Mass.1988) (requiring possession that is peaceable, continuous, and exclusive) and *In re Milford Common J.V. Trust,* 117 B.R. 15 (Bankr.D.Mass. 1990) (holding that Massachusetts law requires an overt act by the assignee to take actual or constructive possession, but also holding that where the assignor frustrates the efforts of the assignee to complete its taking of possession—such as by tearing down notices, refusing to cede possession, or filing a petition under the Bankruptcy Code—the assignor's interference will not defeat the assignee's entitlement). This Court follows *Milford Common:* to the extent that possession is required, it is sufficient for the assignee to assert its right to possession and to take possession if and when the Debtor permits that. An assignor who by interference, noncooperation, or the filing of a bankruptcy petition prevents the assignee from securing actual, exclusive, continuous, and peaceable possession does not thereby defeat the assignee's interest in the rents. This rule avoids unnecessary litigation (in the form of petitions for declaratory and injunctive relief), defiance by financially desperate assignors, and confusion for tenants. And it prevents the assignee's right to the rents from being contingent on the assignor's willingness to cooperate. Therefore, I reject the Debtor's contention that because BayBank's possession was never peaceable and exclusive, its right to the rents never became choate.

■ I also reject the Debtor's argument that my order of April 24, 1991—which vacated the earlier order granting relief from the automatic stay, and which reinstated the stay—should be deemed to have avoided the actions BayBank took while it had relief from the stay, or at least should

---

**10.** The Debtor succeeded in entering only six of the nine units, but it attempted to enter the remaining units and failed only because the Debtor made peaceable entry into those units impossible. Any deficiency in BayBank's entry with respect to the three units it could not enter was rectified by the preliminary injunction later obtained by BayBank, which enjoined the Debtor from interfering with BayBank's right to collect the rents with respect to *all* the units.

**11.** Compare *In re Prichard Plaza Associates Limited Partnership,* 84 B.R. 289, 297 (Bankr.

D.Mass.1988) (requiring possession), *In re Ledgemere Land Corp.,* 116 B.R. 338, 341 (Bankr. D.Mass.1990) (specifying that the possession required must be actual, peaceable, continuous, and exclusive), and *In re Milford Common J.V. Trust,* 117 B.R. 15 (Bankr.D.Mass.1990) (requiring "an overt act by the mortgagee to take actual or constructive possession"), with *In re Ashford Apartments Limited Partnership,* 132 B.R. 217, 219 (Bankr.D.Mass.1991) (requiring only entry and notice to tenants).

be deemed to have reinvested the Debtor with superior rights to all rents subsequent to April 24, 1991. My order of April 24, 1991, did not vacate the earlier order *ab initio* or invalidate acts taken while it was in effect. It simply reinstated the stay as of April 24, 1991. And by doing so the order did not divest BayBank of the rights it gained in the interim. The automatic stay simply prohibits further acts. It does not invalidate acts already taken. And, contrary to the Debtor's contention, this Court's later order (dated June 20, 1991), which required the tenants to resume making their rent payments to the Debtor instead of to BayBank, did not alter the parties' substantive rights to the rents. That order simply reinstated the Court's earlier cash collateral order, the purpose of which was to preserve the net rents pending later adjudication of the parties' respective rights to them.

The Debtor also argues that even if BayBank is found to have a superior right to the rents, the Court should nonetheless deny BayBank's request for turnover because, under the "equities of the case" exception to 11 U.S.C. § 552(b),[12] the Debtor should be allowed to retain the rents. The equitable consideration on which the Debtor relies is that the rents BayBank seeks were earned entirely through the Debtor's efforts while the Debtor, not BayBank, was actually in possession, incurring liability for the maintenance of the property.

This argument does not justify the relief the Debtor requests: complete disallowance of BayBank's security interest in the rents. The Debtor has known since April 1, 1991, that BayBank asserts a secured claim against the rents and that, but for the Debtor's invoking the automatic stay, BayBank would have taken actual posses-

sion of the premises. It understood that the validity of BayBank's security interest in the rents was unresolved and that, depending on the resolution of that issue, the fruits of its efforts (in managing the property) might inure to BayBank. Therefore, I find no unfairness to the Debtor or its creditors in enforcing BayBank's interest in the rents.

Nonetheless, the Debtor's argument does support lesser relief: the Debtor is entitled to setoff against BayBank's interest in the rents any expenses that accrued on or after April 1, 1991, that the Debtor has paid or will pay for maintaining the property and servicing the leases. Had the Debtor not invoked the automatic stay, BayBank would have taken possession of the property and would itself have incurred and borne those expenses. To disallow this credit would be to unjustly enrich BayBank at the expense of the administrative creditors.

*Conclusion*

The Court concludes that BayBank has a valid security interest in all rents that accrued on or after April 1, 1991, and not in any that accrued before that date. The Debtor must turn over to BayBank the rents in which it has a security interest, less any expenses that accrued on or after April 1, 1991, that the Debtor has paid or will pay for maintaining the property and servicing the leases, but in any event not more than the balance of BayBank's claim.

No final order will enter at this time. The Court will issue a separate procedural order to help quantify the amount to be turned over.

---

12. *Section 552(b) states:*

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).