**In re G. Burton MULLEN, Debtor.**

**Bankruptcy No. 93–41008–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 28, 1994.

Andrew G. Lizotte, Donald F. Farrell, Jr., Hanify & King Professional Corp. Boston, MA, for G. Burton Mullen (Debtor).

Charles R. Bennett, Kevin J. Simard, Riemer & Braunstein, Boston, MA, for Bay-Bank (Creditor).

James Barnhill, Peters, Barnhill & Rodolakis, Worcester, MA, for Official Unsecured Creditors Committee.

Peter J. Stocks, Atty. Advisor, Dept. of Justice, U.S. Trustee's Office, Worcester, MA, for U.S. trustee (Party in interest).

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

BayBank asserts it lacks adequate protection of its security interest in rents from four commercial properties included under its mortgages and rent assignments. It moves for an order requiring G. Burton Mullen (the "Debtor") to turn over to it all "net rents" (after expenses). Alternatively, BayBank requests an order requiring the Debtor to "segregate" the monthly net rents, presumably through creation of an escrow account set aside for BayBank's benefit.

The properties are being well maintained, and there is no suggestion they or the rental streams they generate are declining in value. Taxes and insurance are current. The question presented is whether BayBank's adequate protection rights concerning rents should be considered separately or as part of the adequate protection of its security interest in the Debtor's entire property interests, including the stream of future rents. I conclude the latter analysis is appropriate, and hold that BayBank's security interest under its mortgages and rent assignments are adequately protected without the requested turnover or escrow of net rents. I therefore deny the motion. Alternatively, I deny the motion on the ground the requested turnover or escrow would bring about an increase in the value of BayBank's security interests that is inconsistent with the "equities of the case" within the meaning of section 552(b) of the Bankruptcy Code.

BayBank holds notes with a total balance of about $3.5 million, secured by four commercial properties, one in Marlborough, Massachusetts and three in Sudbury, Massachusetts. The properties have an aggregate fair market value of about $2.84 million. The Debtor owns two outright. The other two are held by a partnership or nominee trust in which the Debtor owns a beneficial interest. BayBank holds a mortgage and rent assignment on each of the properties, all of which have been recorded.

Under the rent assignments, the borrowers assigned all "right, title and interest in and to the Rents." The assignments state they "shall become operative, at the option of the Lender, upon any default by the Borrowers...." The assignments further authorize BayBank, after a default, to collect all unpaid rents then due and all rents thereafter accruing.

Payment defaults occurred under all the notes. BayBank gave the Debtor notice of the defaults, and it accelerated payment due under the notes, but did not take possession of the properties. Nor did it commence any foreclosure or court proceeding. The Debtor's chapter 11 filing followed on April 12, 1993. In March of 1994, BayBank sought relief from stay in order to foreclose under its mortgages. That motion was denied, without prejudice, due in part to the Debtor's pending preference claims against BayBank concerning the mortgages, which will shortly

be tried. On August 1, 1994, BayBank filed the present motion.

In the pending preference action, the Debtor contends that documents which collateralized all the notes by all the mortgages effected preferential transfers. Without that cross-collateralization, the Debtor asserts, BayBank would be over-secured on some of the properties, so there would be a surplus available to the estate.

For purposes of the present motion, I assume the mortgages secure all the notes, resulting in BayBank being undersecured. That is the collateral position most favorable to BayBank's adequate protection argument on the present motion.

▬ Rents, like the cash proceeds of receivables or inventory, are cash collateral when included within a creditor's security interest.[1] The Debtor may not use rents unless BayBank consents or the court authorizes the use.[2] The court may grant the authorization over BayBank's objection only if BayBank has adequate protection.[3] BayBank first objected to the Debtor's use of rents when it filed the present motion in August of 1994, long after the Debtor's chapter 11 filing on April 12, 1993. Although BayBank had filed a motion for relief from stay in March of 1994, it sought in that motion to foreclose its mortgage rather than to raise objections to the Debtor's use of rents. I thus consider BayBank to have consented to the use of rents until it filed the present motion. I treat the Debtor's objection to the motion as a request for use of rents over BayBank's objection.

## I. THE INDIVISIBLE NATURE OF BAYBANK'S ADEQUATE PROTECTION RIGHTS

BayBank devotes a considerable portion of its brief to the assertion that, absent the automatic stay, it has an enforceable right to collect rents, notwithstanding its lack of possession of the properties prior to the petition filing date. Its right to collect rents, Bay-

Bank reasons, means the automatic stay against collection necessarily denies it adequate protection. The subject of BayBank's rent collection rights is briefly treated in Part III of this opinion. I here assume that absent the automatic stay BayBank would have an immediate right to collect rents. That subject, however, is somewhat of a red herring, drawing attention away from adequate protection principles. The existence of a present right (outside bankruptcy) on the part of BayBank to collect rents does not mean denial of the exercise of the right constitutes denial of adequate protection.

In collecting rents, a creditor holding a rent assignment is obviously realizing upon its collateral. The collection of rents is therefore foreclosure of a security interest under another name. Assuming a debtor has reasonable prospects of reorganization, a creditor otherwise entitled to foreclose may not do so unless cause, including lack of adequate protection, exists to vacate or modify the automatic stay against foreclosure.[4]

BayBank's present motion, which is brought under section 363 rather than section 362, purports only to request an order restricting the Debtor's use of cash collateral, rather than permission to foreclose. Even when the motion is so viewed, the issue presented is one of adequate protection. The Debtor may use BayBank's cash collateral provided the use does not deprive BayBank of adequate protection.[5]

▬ BayBank's contention that it lacks adequate protection of its interest in rents incorrectly assumes that a mortgagee holding a rent assignment has adequate protection rights in the rents which are independent of its right to adequate protection of its security interest in the debtor's entire interest in the property, including the debtor's right to collect rents. BayBank's contention also ignores the difference between a security interest in a stream of rents and realization upon that security interest. Understanding the

1. 11 U.S.C. § 363(a) (1988).

2. 11 U.S.C. § 363(c)(2) (1988).

3. 11 U.S.C. § 363(e) (1988).

4. 11 U.S.C. § 362(d) (1988).

5. 11 U.S.C. § 362(e) (1988).

fallacy of BayBank's argument requires, first, a brief review of adequate protection principles.

■ The Bankruptcy Code is consistent throughout in describing that which must be adequately protected as the creditor's "interest in property." [6] Although the Code contains no formal definition of adequate protection, or the lack thereof, the examples in section 361 of ways of providing adequate protection are revealing. Under section 361, set forth in full below,[7] adequate protection may be provided by cash payments or additional or replacement liens "to the extent" the debtor's use of the property "results in a decrease in the value of such entity's interest in such property." It is obvious from this language that the value of the creditor's interest in property must be declining if the creditor is to be lacking adequate protection, and the courts have so held.[8] Moreover, an undersecured creditor does not lack adequate protection merely by reason of being undersecured, even though it has no right to further interest and the automatic stay prevents it from foreclosing and investing the foreclosure sales proceeds.[9]

These general principles do not seem to be contested. What is contested is BayBank's assertion that its rent assignments give it an "interest in property" which is entitled to adequate protection independent of the adequate protection rights of its over-all security interest under the mortgages and rental assignments. What, then, is the nature of Bay-Bank's interest in rents?

BayBank has a perfected security interest in rents through the recording of its mortgages and rent assignments.[10] Rents constitute cash collateral.[11] Under section 552(b), BayBank's postpetition security interest in rents "extends to ... rents ... acquired by the estate after the commencement of the case", unless the equitable principles discussed later apply.

■ BayBank says the value of its interest in the Debtor's property declines each time the Debtor consumes a month's rent in its operations. That is not so. Although Bay-Bank loses its security interest in each month's rents as the rents are consumed, BayBank retains its security interest in all future rents. The value of that stream of future rents is not declining. The lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value, within the meaning of section 361.

What BayBank actually wants to do is to now realize upon its security interest in rents. In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*,[12] the Supreme Court held a se-

---

**6.** *See* 11 U.S.C. §§ 361, 362, 363 and 364.

**7.** Section 361 provides:
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

**8.** *E.g.*, *In re Kalian*, 169 B.R. 503, 505 (Bankr. D.R.I.1994); *Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assoc. Ltd. Partnership*, 153 B.R. 204, 210 (N.D.Ill.1993); *In re Robbins*, 119 B.R. 1 (Bankr.D.Mass.1990); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 826 (Bankr.S.D.N.Y. 1982).

**9.** *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

**10.** *E.g.*, *Vienna Park Properties v. United Postal Sav. Ass'n (In re Vienna Park Properties)*, 976 F.2d 106 (2d Cir.1992); *In re Prichard Plaza Assocs. Ltd. Partnership*, 84 B.R. 289 (Bankr.D.Mass. 1988). *See also* Part III of this opinion.

**11.** 11 U.S.C. § 363(a) (1988).

**12.** 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

cured creditor's "interest in property" does not include the right to immediate possession of collateral or its proceeds at foreclosure. By the same token, "interest in property" does not include the right to immediate possession of rents.[13]

Because of the red herring of rent collection rights, few of the decisions concerning rents discuss these basic adequate protection concepts. It is generally agreed the holder of a mortgage and rent assignment is not denied adequate protection with respect to rents that are used to maintain the property.[14] But often ignored is the question of whether any payment is necessary if the property's value is not declining. Most helpful are decisions dealing with disputes concerning the proper application of consensual payments made during the case to the mortgage holder. Most courts hold no adequate protection payment was necessary when the property's value remains constant. For example, in *In re IPC Atlanta Limited Partnership*,[15] the debtor had voluntarily made eight mortgage payments during the case. It did so even though the property's value was not declining. The debtor later proposed a plan that sought to apply the payments to the first eight mortgage payments due after confirmation. The mortgagee argued that the payments already made were necessary to adequately protect it against the debtor's use of rents because the rental assignment gave it a separate category of collateral. The payments, said the mortgagee, merely offset the rents used and should not reduce its debt at all. The court disagreed. It viewed the security interest as a whole, treating as one the security interest obtained through the mortgage and the rent assignment. Because the value of that over-all interest was not declining, the court held there was no lack of adequate protection, citing *Timbers*. It therefore allowed the payments to be offset against future plan payments. Not to apply the payments against the debt, the court observed, would allow the creditor to receive more than the amount of its secured claim. Most of the decisions have adopted this reasoning and require postpetition payments to be credited to principal.[16]

A lender's security interest in receivables or inventory and their proceeds provides an analogy to the security interest in rents.[17] A receivable or inventory lender does not lack adequate protection, even if it is undersecured, so long as the value of the stream of future accounts or inventory and their proceeds is not declining.[18] As a result, orders routinely issue authorizing a debtor to use a lender's cash collateral consisting of the proceeds of receivables or inventory. The lender cannot complain about the debtor's consumption of any particular proceeds. Those proceeds are used to generate new collateral and new proceeds. Assuming the debtor is

---

**13.** *In re Oaks Partners, Ltd.*, 135 B.R. 440, 450 (Bankr.N.D.Ga.1991).

**14.** *E.g., In re 5028 Wisconsin Ave. Assoc. Ltd. Partnership*, 167 B.R. 699 (Bankr.D.C.1994).

**15.** 142 B.R. 547 (Bankr.N.D.Ga.1992).

**16.** *E.g., In re Kalian*, 169 B.R. 503 (Bankr.D.R.I. 1994) (rents paid while collateral is not declining not necessary for adequate protection under *Timbers* and properly deducted from principal); *In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr.N.D.Ga. 1991) (same). *Contra, In re Flagler-at-First Associates, Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990) (security interest in postpetition rents considered separate security interest; postpetition payments treated as a wash against postpetition rents).

**17.** I assume the receivable lender obtains a "rollover" lien in postpetition receivables and their proceeds. Such an order need not be obtained by the holder of a mortgage and rent assignment because under section 552(b) a prepetition security interest extends to "property of the debtor acquired before the commencement of the case" and to "rents ... acquired by the estate after commencement of the case...."

**18.** *E.g., In re Dynaco Corp.*, 162 B.R. 389 (Bankr. D.N.H.1993); *In re International Design & Display Group, Inc.*, 154 B.R. 362, 364 (Bankr. S.D.Fla.1993); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr.D.Mass.1990); *In re T.H.B. Corp.*, 85 B.R. 192 (Bankr.D.Mass.1988); *In re Neise, Inc.*, 16 B.R. 600, 602 (Bankr.S.D.Fla.); *In re Thomas Parker Enters., Inc.*, 8 B.R. 207, 212 (Bankr.D.Conn.1981). *See also,* Raymond T. Nimmer, *Adequate Protection,* CHAPTER 11 THEORY AND PRACTICE 16.72 (James F. Queenan, Jr., Philip J. Hendel, Ingrid M. Hillinger, eds., 1994) ([W]here there is the likelihood that the new collateral will match or exceed values attributable to the property that is consumed, the grant of the replacement lien provides adequate protection.").

operating at no less than a break even, the new collateral and proceeds will be of at least equivalent value of those they replace. The same is true of each month's rents received by the Debtor.

A security interest in rents or receivable proceeds is quite different from a security interest in other cash collateral, such as a certificate of deposit. A certificate of deposit which is consumed by a debtor may never be replaced. Rents and receivable proceeds, on the other hand, constantly renew themselves. So long as the debtor is not operating at a loss, or rents are not declining, the renewals provide constant value.

BayBank's unchanging collateral position also becomes apparent when one realizes that the value of accruing rents is an integral part of the value of the real estate itself. The value of commercial real estate depends largely, if not exclusively, upon its rental income. Appraisers have traditionally arrived at their opinion of value by first determining what sum represents the property's annual net income potential, and then capitalizing that amount by multiplying it by a figure which represents a reasonable percentage return on investment divided into one hundred.[19] In more recent years, real estate appraisers have varied this technique. They project a stream of future net income for, say, ten years. They discount the total net rental stream to its present value, and then add to that sum the present value of the property's value ten years hence.[20] Under either technique, rental income is determinative.

The value of the Debtor's properties is therefore based upon their rental incomes. As a result, so too is the value of BayBank's mortgage interest. It is thus impossible to arrive at a value of BayBank's interest in rents which is independent of the value of its mortgage interest. The value of that mortgage interest is not declining because rents are not declining. Consumption of those rents in the Debtor's real estate operations has no adverse effect upon the mortgage value. Indeed, it has a positive affect. If the rents were not used to pay for management, taxes and maintenance of the properties, the value of BayBank's mortgage interest would rapidly decline.

## II. EQUITIES RELEVANT TO BAY-BANK'S SECURITY INTEREST IN RENTS

■ There is another reason not to order a turnover or escrow of net rents. It would be inequitable for BayBank to have a security interest in each month's rents which is paid to BayBank rather than used by the Debtor and replaced by BayBank's security interest in rents of the following month.

Section 552(b) of the Bankruptcy Code contains an exception to its grant of a postfiling security interest in rents. A postfiling security interest in rents exists under section 552(b) "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."[21] Legislative history sheds some light on this language. The House bill phrased the exception this way: "except to the extent that the estate acquired such proceeds, product, offspring, rents, or profits to the prejudice of other creditors."[22] The House committee report explained: " 'Prejudice' is not intended to be a broad term here, but is designed to cover the situation where ... raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the fund available for general unsecured creditors."[23]

The bill later passed by the Senate had slightly different language. Its exception read: "except to the extent that, where the estate acquired the proceeds, product, offspring, rents, or profits at the expense of other creditors holding unsecured claims, the

19. *See, e.g., Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assoc. Ltd. Partnership*, 153 B.R. 204, 209 (N.D.Ill.1993); *In re Robbins*, 119 B.R. 1, 2–3 (Bankr.D.Mass.1990).

20. *Id.*

21. 11 U.S.C. § 552(b) (1988).

22. H.R. 8200, 95th Cong., 1st Sess. (1978).

23. H.R.Rep. No. 595, 95th Cong., 1st Sess. at 377 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6333.

expenditure would result in an improvement in the position of the secured party." [24] The Senate obviously wanted to be sure the exception was limited to the benefit accruing to the secured party from the estate's expenditure of funds. Its committee report confirms this. After giving the same examples contained in the House report of conversion of raw materials into inventory and inventory into accounts, the Senate committee report states the exception "is limited to the benefit inuring to the secured party." [25]

The wording of the statute as finally enacted, with its broad reference to the "equities of the case," was the result of a compromise between the two Houses on their slight difference in wording. It was stated on the floor of both the House and Senate: "Section 552(b) represents a compromise between the House [Senate] bill and the Senate [House] amendment.... The provision allows the court to consider the equities in each case. In the course of such consideration the court may evaluate any expenditures by the estate relating to proceeds and any related improvement in position of the secured party." [26]

As demonstrated by the statements on the floor of both branches, Congress was concerned about the situation where the estate spends money and thereby causes an enhancement in proceeds or rents which improves the position of the secured party. [27] It had foremost in mind the conversion of raw materials to inventory or inventory to accounts. But Congress obviously did not wish to limit the exception to those circumstances. The standard for application of the exception—"the equities of the case"—gives the court the broadest possible charter.

BayBank's continuing security interest in a stream of post-petition rents does not improve its position. This is the same security interest in rents it had before the petition

filing date. The value of that rental stream may be increasing through additional tenancies brought on by the Debtor's ongoing management. But there is nothing inequitable about that. The parties presumably intended the value of BayBank's security interest to be dependent, at least in part, on the Debtor's management skills.

BayBank's position would dramatically change, however, should I grant its request for a turnover or escrow of net monthly rents. Because BayBank is undersecured and thus not entitled to interest, [28] BayBank would be required to apply any net rents so received to principal. [29] During each month, therefore, BayBank would substantially improve its position. Its debt would decline, yet its security value would remain constant. This would be at the expense of the estate, which would still be harnessed with operating the properties. BayBank's security interest in rents would be thereby changed from one that fills and empties each month to one that increases, indeed is realized upon, incrementally. Extension of BayBank's post-filing security interest in that fashion would be inequitable. The inequity is present even though the estate's expenses for each month are deducted before the monthly turnover or escrow. Reserves for replacement are often necessary. Even with the deduction of any such reserves, however, the paramount inequity would remain. BayBank would be enjoying the fruits of the Debtor's labor while BayBank in effect conducts a gradual foreclosure at a time when its security value remains constant.

## III. BAYBANK'S RIGHT TO COLLECT RENTS

I earlier referred to BayBank's rent collection rights as a red herring to adequate

**24.** S. 2266, 95th Cong., 2d Sess. § 552(b) (1978).

**25.** S.Rep.No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5877.

**26.** 124 Cong.Rec. H11047–117 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,403–34 (daily ed. Oct. 6, 1978).

**27.** *E.g., In re Cross Baking Co., Inc. (New Hampshire Business Dev. Corp. v. Cross Baking Co., Inc.),* 818 F.2d 1027, 1033 (1st Cir.1987).

**28.** 11 U.S.C. § 506 (1988).

**29.** *E.g., In re Oaks Partners, Ltd.,* 135 B.R. 440 (Bankr.N.D.Ga.1991).

protection analysis. One judge has gone further. He describes the entire case law on security interests in rents as a " 'school of red herring' " full of "irrelevant extraneous legal and metaphysical questions."[30] The question whether an assignee of rents has the' present right (absent the stay) to collect rents is irrelevant to an adequate protection inquiry because collection of rents is in essence foreclosure upon a security interest. In determining the presence or absence of adequate protection, it is assumed the secured party has the right to foreclose outside of bankruptcy. I shall nevertheless briefly treat the assignee's rent collection rights in view of the briefing the parties have devoted to that subject.

■ The assignee's rent collection rights depend upon state law. In most states, the assignee must first take possession of the property, or have a receiver appointed who acts on its behalf.[31] Interpreting Massachu-setts law, I have previously held an assignee of rents must take physical, not just symbolic, possession of the property in order to obtain the present right to collect rents.[32] In those earlier decisions, I attempted to explain that the existence of present rent collection rights would not end the adequate protection analysis. I also attempted to make it clear the issue was not whether the assignee holds a perfected security interest in cash collateral consisting of rents, which the assignee does, but rather whether at state law the assignee was then entitled to foreclose upon that security interest through collection of the rents.[33] The earlier decisions involved claims to past rent as well as future rent, so I was forced to explore the assignee's right to collect rents.[34]

Later, in an unpublished ruling, I denied, without explanation, the motion of a rent assignee seeking an order requiring segregation of all prior rents and a turnover of all

---

**30.** *In re Rancourt,* 123 B.R. 143, 146 (Bankr. D.N.H.1991).

**31.** *See Democratic Central Comm. of D.C. v. Washington Metropolitan Area Transit Comm'n,* 21 F.3d 1145, 1150 (D.C.Cir.1994).

**32.** *In re Ledgemere Land Corp.,* 116 B.R. 338 (Bankr.D.Mass.1990); *In re Prichard Plaza Assoc. Ltd. Partnership,* 84 B.R. 289 (Bankr.D.Mass. 1988). Other bankruptcy judges in this district, although agreeing that some form of possession is necessary, require varying degrees of possessory conduct for the ripening of rent collection rights. *See In re Harvey Road Assocs. VIII,* 140 B.R. 302 (Bankr.D.Mass.1992) (some act to collect rents required); *In re Cantonwood Assocs. Ltd. Partnership,* 138 B.R. 648, 22 B.C.D. 1350 (Bankr.D.Mass.1992) (filing of certificate of entry, giving notice to tenants and initiating action to gain possession deemed sufficient); *In re Concord Mill Ltd. Partnership,* 136 B.R. 896 (Bankr. D.Mass.1992) (notice to tenants without attempt at physical entry not sufficient); *In re Ashford Apartments Ltd. Partnership,* 132 B.R. 217 (Bankr.D.Mass.1991) (entry and notice of entry sufficient).

**33.** The red herring of rent collection rights has caused further confusion with respect to perfection. Many courts consider a postpetition event that triggers collection rights (usually a motion for segregation or turnover of rents filed with the bankruptcy court) as "perfection" of the security interest. They then have to deal with the estate's strong arm powers under section 544(a) of the Code, which are generally superior to security interests unperfected at the filing. Undaunted, they seize upon section 546(b), which recognizes the efficacy of security interests that have a retroactive effect under applicable state law. They do this even though state law requiring possession or a receiver as a precursor to rent collection gives no retroactive effect to the possession or appointment of a receiver. They reason that a motion filed in bankruptcy court for segregation or turnover of rents is the equivalent, outside of bankruptcy, to the creditor seeking the appointment of a receiver. They give the motion retroactive rights even though a receiver at state law gets no retroactive rights. Then, inconsistently, they give the creditor rights in only future rents. *See, e.g., Virginia Beach Fed. Sav. & Loan Ass'n v. Wood,* 901 F.2d 849 (10th Cir.1990); *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir.1987); *Casbeer v. State Fed. Sav. & Loan Ass'n,* 793 F.2d 1436 (5th Cir.1986); *Wolters Village, Ltd. v. Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.1984). *See also, In re Century Inv. Fund VIII Ltd. Partnership,* 937 F.2d 371 (7th Cir.1991) (lender "perfected" its security interest by prepetition filing of foreclosure action). *Compare, e.g., Vienna Park Properties v. United Postal Sav. Ass'n (In re Vienna Park Properties),* 976 F.2d 106, 113–14 (2d Cir.1992) (security interest in rents "perfected" but inchoate" until possession; lender's request to collect rents denied due to lender's lack of possession, but lender held entitled to "sequester" rents in order to make rents "subject to protection as cash collateral").

**34.** *See In re Ledgemere Land Corp.,* 116 B.R. at 341–42; *In re Prichard Plaza Assoc. Ltd. Partnership,* 84 B.R. at 298.

future rents after expenses and reserves.[35] On appeal, Judge Gorton of the District Court interpreted my denial of the motion as a holding that rents are not cash collateral.[36] Judge Gorton did not quarrel with my previous interpretations of Massachusetts law on enforcement of the right to collect rents, and properly concluded the right "is unrelated to the determination of what is cash collateral under the Bankruptcy Code." [37] Judge Gorton believed, however, that the existence of a perfected security interest in rents as cash collateral was dispositive of the motion, notwithstanding the foreclosure relief sought in the motion. He recognized there might be occasion to apply the "equities of the case" exception of section 552(b), and he remanded the case for a further hearing on that issue.[38] The matter was settled before that hearing could take place. Significantly, Judge Gorton did not discuss adequate protection principles, apparently because they were not argued. My ruling below was largely grounded on these principles, but unfortunately it was not accompanied by findings of fact or conclusions of law.

Judge Gorton's decision is therefore not inconsistent with my holding here. I fully agree BayBank has a perfected security interest in cash collateral consisting of rents. Indeed, I go further in Part I of this opinion and assume that BayBank has the present right to collect rents, notwithstanding its prepetition lack of possession which I (and apparently also Judge Gorton) believe deprives it of the present right to collect rents.

## IV.  CONCLUSION

BayBank's motion is denied on two alternative grounds: (i) its security interests are adequately protected, and (ii) granting the motion would inequitably augment its existing security interest in postpetition rents. A separate order has issued.

**35.**  *In re Boston Harbor Marina Co.,* No. 92–42180 (D.Mass. April 17, 1993).

**36.**  *The Prudential Ins. Co. of America v. Boston Harbor Marina Co.,* 159 B.R. 616 (D.Mass.1993).

**37.**  *Id.* at 620.

**38.**  *Id.* at 623.