In re WHITE PLAINS DEVELOPMENT CORPORATION, et al., Debtors.

Bankruptcy No. 91 B 21481.

United States Bankruptcy Court, S.D. New York.

Jan. 29, 1992.

Rogers & Wells, New York City, for debtors.

Hebb & Gitlin, Hartford, Conn., for Connecticut Gen. Life Ins. Co.

## DECISION ON MOTION FOR AN ORDER FOR TURNOVER OF RENTS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 11 debtor, White Plains Development Corporation, and a first priority mortgagee, Connecticut General Life Insurance Company ("Connecticut General"), dispute the extent of Connecticut General's right to receive rents as cash collateral. Connecticut contends that it is entitled to receive assigned rents as cash collateral from the date of the commencement of this Chapter 11 case. The debtor argues that Connecticut General's right to the assigned rents should commence either as of the date this court entered an order granting Connecticut General's motion for a turnover of the assigned rents as cash collateral, or when Connecticut General first moved to enforce its right to the cash collateral.

## FACTUAL BACKGROUND

On September 25, 1991, the debtor and its related corporations filed with this court petitions for reorganizational relief under Chapter 11 of the Bankruptcy Code and were continued in management of their assets as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Thereafter, this court entered an order procedurally consolidating the separate Chapter 11 cases for administration purposes.

The debtor is in the business of owning, developing and operating commercial real estate and buildings, including real estate in New York and Massachusetts. Connecticut General holds a perfected first priority security interest under several mortgages and notes with respect to commercial real estate owned by the debtor in Boston, Massachusetts. Under the terms of the mortgages and notes, Connecticut General was given an assignment of rents accrued, or accruing in the future, with respect to leases under which the debtor is a lessor. According to the terms of the mortgages, the assignment of the rents under the mortgages in question was absolute and effective immediately, but until a mortgage default occurred, the debtor retained the right to collect the rents.

Connecticut General's motion for a turnover of the assigned rents, dated November 15, 1991, was heard by the court on

December 9, 1991. After the presentation of evidence by both parties, the court stated that Connecticut General's motion for a turnover of rents was a sufficient affirmative act to trigger its right to enforce the assignment of rents clause in the mortgages. The parties then recessed to work out a settlement stipulation whereby the debtor agreed to segregate the assigned rents as cash collateral to which Connecticut General was entitled. However, it was stipulated that the debtor could use a portion of the rents for capital improvements and reasonable operating expenses of the buildings covered by the mortgages in question. The monthly net operating income after such expenditures was to be turned over to Connecticut General as adequate protection for the debtor's right to use Connecticut General's cash collateral. It was further agreed that Connecticut General would be entitled to relief from the automatic stay if the debtor failed to make the required monthly payments.

The parties could not agree to the contents of an order embodying their stipulation. The first issue to be resolved is whether Connecticut General's right to the cash collateral, as represented by the assigned rents, accrued on and after November 18, 1991, the date on which Connecticut General filed its motion, or whether such right accrued as of the date of the Chapter 11 petition. The other open issue is whether the debtor is entitled to a cure period in the event it defaults in making the monthly net income payments pursuant to the stipulation between the parties.

## DISCUSSION

▉ To determine Connecticut General's interest in the mortgage and rents in question, the court must refer to Massachusetts law, where the properties are located. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Massachusetts law, a validly perfected security interest under an assignment of rents clause in a mortgage gives the assignee an inchoate lien with respect to the assigned rents. *In re Ledgemere Land Corp.*, 116 B.R. 338, 340 (Bankr. D.Mass.1990) ("Rents are 'cash collateral,'

11 U.S.C. § 363(a), which a mortgagor may use over the objection of the mortgagee only if authorized by the court."); *In re Pritchard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 298 (Bankr.D.Mass.1988). However, in Massachusetts, the assignee's inchoate lien with respect to the assigned rents does not give rise to a right to collect the rents until the assignee takes affirmative action to enforce collection. *Id.*

▉ The distinction between perfection and enforcement is significant. If bankruptcy, and therefore the automatic stay, intervenes between the perfection of the mortgagee's lien and the right to enforce the lien by collection of the rents, the mortgagee may rely on 11 U.S.C. § 363(a), which defines "cash collateral" to include rents subject to a security interest as provided in 11 U.S.C. § 552(b). Cash collateral may not be used by the debtor without satisfying the requirements of 11 U.S.C. § 363(c)(2). Additionally, the debtor in possession or a trustee is required by the terms of 11 U.S.C. § 363(c)(4) to segregate and account for any cash collateral in its possession, custody or control as of the commencement of the case. Thus, just as a debtor obtains an interest in property of the estate, as defined in 11 U.S.C. § 541(a)(1), as of the commencement of a bankruptcy case, including the right to proceeds or rents, as expressed in 11 U.S.C. § 541(a)(6), so too does a perfected assignee of rents as cash collateral obtain a right to have the cash collateral segregated and restricted as of the commencement of the case. The Bankruptcy Code does not give a debtor an unfettered right to use cash collateral until such time as a secured claimant moves to enforce its secured right to the cash collateral. The debtor's obligation, as of the commencement of the case, to segregate and account to the secured claimant for the cash collateral reflects that the claimant's secured interest in the cash collateral dates back to the commencement of the case and not to the time when the claimant first moves to enforce its secured interest in the collateral.

■ Accordingly, Connecticut General's right to the cash collateral, as represented by the assigned rents, accrued as of September 25, 1991, the date the debtor filed its Chapter 11 petition, although its right to collect the rents did not accrue until it took affirmative action by seeking turnover of the assigned rents. The debtor had the right to collect the assigned rents until Connecticut General established its right of collection. However, the fact that the debtor had the right to collect the rents does not detract from the fact that the rents which it collected constituted cash collateral of Connecticut General under the latter's inchoate lien and had to be segregated and could not be used by the debtor without a court order in accordance with 11 U.S.C. § 363(c)(2)(B). Absent such court order, Connecticut General was entitled to its cash collateral as of the commencement of the debtor's Chapter 11 case. Therefore, the stipulation between the parties allowing the debtor to use a portion of the cash collateral, subject to providing agreed upon adequate protection to Connecticut General in the form of monthly payments, should relate back to the commencement of this Chapter 11 case.

■ The second issue involves the debtor's request for a cure period in the event it defaults in making the monthly adequate protection payments to Connecticut General. The stipulation which the parties entered into in open court contemplated that in the event of the nonpayment of monthly net income, as required by this court's order, Connecticut General would submit an affidavit stating that the debtor defaulted in making such payments. Thereafter, the debtor would have seven days to submit an affidavit disputing the existence of a default in the event that the debtor contends that it did not fail to make the required monthly payments. In the absence of a dispute, or if it is determined by the court after a hearing that a default did occur, Connecticut General would be entitled to an order for relief from the automatic stay. The stipulation did not provide for a cure period and the court will not modify the agreement between the parties to provide for a cure period.

A third point raised by the parties is whether the stipulation between the parties as to Connecticut General's secured interest in cash collateral bars the debtor from later challenging that secured interest pursuant to 11 U.S.C. § 544. This point need not be reflected in the order involving cash collateral because there was no motion before the court with respect to 11 U.S.C. § 544.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E).

2. Connecticut General's right to the cash collateral, as represented by the assigned rents, accrued as of September 25, 1991, the date the debtor filed its Chapter 11 petition, although its right to collect the rents did not accrue until it took affirmative action by seeking turnover of the assigned rents.

3. The stipulation between the parties entered on the record on December 9, 1991 did not provide for a cure period and the court will not modify the agreement to provide for a cure period.

SETTLE ORDER in accordance with the foregoing.