In re WHITE PLAINS DEVELOPMENT CORPORATION, et al., Debtors.

Bankruptcy No. 91 B 21481.

United States Bankruptcy Court, S.D. New York.

Feb. 25, 1992.

Rogers & Wells, New York City, for debtors.

Hebb & Gitlin, Hartford, Conn., for Connecticut General Life Ins. Co.

DECISION ON MOTION FOR AN ORDER AMENDING ORDER DETERMINING POSTPETITION RENTS TO BE CASH COLLATERAL OF CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND ORDER CONDITIONING DEBTORS' USE OF RENTS AND PROVIDING ADEQUATE PROTECTION OF CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S INTEREST IN RENTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

White Plains Development Corporation, the Chapter 11 debtor in this case, for itself and on behalf of P & P Realty Company, Boston Harbor Industrial Development Corporation, Pappas Industrial Parks and E Street Associates, has moved for a new trial or reargument pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59. The motion is directed to this court's order dated February 14, 1992, which awarded to the first priority mortgagee, Connecticut General Life Insurance Company ("Connecticut General"), the right to receive assigned rents under certain mortgages and notes with respect to commercial real estate owned by the debtor in Boston, Massachusetts.

In a decision dated January 29, 1992, this court held that Connecticut General's right to use the assigned rents as cash collateral accrued as of September 25, 1991, the date the debtor filed its Chapter 11 petition, although its right to collect the rents did not accrue until it took affirmative action by seeking turnover of the assigned rents.

*In re White Plains Development Corporation*, 136 B.R. 93 (Bankr.S.D.N.Y.1992). The rents that the debtor collected from the commencement of the Chapter 11 case constituted cash collateral under Connecticut General's inchoate lien, had to be segregated and could not be used by the debtor without a court order. 11 U.S.C. § 363(c)(2)(B). Accordingly, this court concluded that absent such court order, Connecticut General was entitled to have the assigned rents treated as cash collateral as of the commencement of the debtor's Chapter 11 case. The parties had previously stipulated as to the amount of cash collateral the debtor could use in connection with the operation of the mortgaged real estate. Therefore, the excess of the cash collateral beyond the funds applied towards the maintenance of the real estate had to be turned over by the debtor to Connecticut General as of the commencement of the Chapter 11 case.

The debtor now seeks an amendment of this court's previous order of February 14, 1992 to reflect that the excess collected by the debtor from the commencement of the Chapter 11 case until February 14, 1992, when Connecticut General affirmatively established its right to collect such rents, should not be turned over to Connecticut General. The debtor predicates its right to keep the assigned rents from the commencement of the Chapter 11 case until February 14, 1992 on the basis of language in the recent district court decision by Judge Leonard B. Sand in *In re Vienna Park Properties, a Limited Partnership*, 136 B.R. 43 (S.D.N.Y.1992).

## DISCUSSION

In the *Vienna* case the debtor was a limited partnership with real estate in Virginia. A mortgage creditor filed a motion for sequestration of rents as cash collateral under an assignment of rents clause in the mortgage. In its first decision, the bankruptcy court held that under Virginia law the assignment of rent clause was absolute in accordance with the validly recorded mortgage, without the need for any additional steps on the part of the mortgag-

ee to enforce its interest. *In re Vienna Park Properties*, 112 B.R. 597 (Bankr. S.D.N.Y.1990). The bankruptcy court held that the mortgagee was entitled to the assigned rents as of the prepetition date of the debtor's default under the mortgage. Six months later, the bankruptcy court vacated its previous decision and held that the assignment of rent was not absolute and that additional enforcement steps were necessary on the part of the mortgagee as a precondition to entitlement, such as acceleration of the debt and taking possession of the premises. Because these steps had not been taken prepetition, the bankruptcy court concluded that the mortgagee had not "perfected" its inchoate lien for rents. *In re Vienna Park Properties*, 120 B.R. 332 (Bankr.S.D.N.Y.1990).

On appeal, the district court applied state law, as required by *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and held that perfection of an interest in assigned rents under Virginia law is accomplished by recording the agreement that contained the assignment of rents provision. *Vienna*, 136 B.R. at 1992 WL 51 (citations omitted). Therefore, the district court reversed the bankruptcy court's holding that the mortgagee had not perfected its interest in the rents. The district court concluded that under Virginia law possession of the property was not a necessary affirmative step required to be taken by the mortgagee before it could enforce its right to collect the assigned rent. The district court reasoned that because the automatic stay precluded the mortgagee from taking possession of the property, the mortgagee's motion for sequestration of the rents was the equivalent to seeking relief from the stay and was a sufficient affirmative step to trigger the mortgagee's right to enforce its interest in the cash collateral, or in other words, its right to collect the rents.

The *Vienna* court noted that the mortgagee sought a turnover of all rent from the date of the prepetition mortgage default, while the debtor argued that the mortgagee's right to collect the assigned rent began only after the mortgagee took possession of the premises. The district court concluded that both parties were wrong. The district court observed that the debtor may not use cash collateral without the mortgagee's consent, absent a finding by the court that the mortgagee was adequately protected. The district court then concluded that the mortgagee was entitled to collect the assigned rent from the date it filed its motion for sequestration. This holding was based on the reasoning in *Butner* that "the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *Butner*, 440 U.S. at 56, 99 S.Ct. at 918. Having determined that the mortgagee was entitled to collect the assigned rents from the date it filed the motion for sequestration, the district court did not then rule, as the debtor in the instant case would have this court hold, that the *Vienna* debtor was entitled to unfettered use of the cash collateral rent it collected from the commencement of the Chapter 11 case until the mortgagee was entitled to collect the assigned rent. As pointed out by the district court in *Vienna*, the debtor could not use the cash collateral rent unless it first obtained an order from the court that the mortgagee was adequately protected. Hence, absent such a finding and order, the cash collateral assigned rent continued subject to the mortgagee's security interest, even though the debtor collected the rent after the commencement of the Chapter 11 case. The *Vienna* case merely determined from which date the mortgagee was entitled to *collect* the assigned rent, and did not remove the cash collateral restrictions imposed upon the debtor from the commencement of the Chapter 11 case pursuant to 11 U.S.C. § 363(c).

In the instant case, the issue is not from which date the mortgagee is entitled to collect the assigned rents, but rather, who is entitled to the use of the assigned rents collected by the debtor prior to February 14, 1992, when the mortgagee was authorized to collect the assigned rents. The limited holding in the *Vienna* case does not support the debtor's position that it is entitled to keep and use the assigned rents

which it collected from the commencement of this case up to February 14, 1992. The debtor argues that *Butner* stands for the proposition that the mortgagee's rights should not be greater than permitted under state law and that the mortgagee should not receive " 'a windfall merely by reason of the happenstance of bankruptcy.' " *Butner,* 440 U.S. at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturer's National Bank of Detroit,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323, (1961)). This point elides the fact that the Bankruptcy Code, which was not applied at the time *Butner* was decided, did enlarge the rights of secured creditors with respect to cash collateral following the commencement of a bankruptcy case. The concept of cash collateral "embraces the idea of something less than unqualified ownership." *In re Northport Marina Associates,* 136 B.R. 911, 919 (Bankr.E.D.N.Y. 1992).

■ Under the Bankruptcy Code, as applied after the *Butner* case, a debtor must "segregate and account for any cash collateral that it does not have the consent of the creditor or authority from the court to use, sell or lease. 11 U.S.C. § 363(c)(4)." *Id.* The *Vienna* court recognized the restrictions imposed on a debtor under 11 U.S.C. § 363(c) and did not award the debtor an unrestricted use of the assigned rents from the time it filed its Chapter 11 case. The court simply held that the mortgagee had the right to collect the assigned rents from the time it moved for sequestration. The issue as to adequate protection with respect to the accrued cash collateral collected by the debtor from the commencement of the case, for which the debtor had to account to the mortgagee, was not addressed by the *Vienna* court because this question was left to the bankruptcy court to determine upon an appropriate motion made pursuant to 11 U.S.C. § 363(c)(2)(B).

It is clear that the district court in *Vienna* did not intend to authorize the debtor, over the secured creditor's objection, to use the cash collateral assigned rent from the date the Chapter 11 case was commenced. The *Vienna* court cited with approval the decision in *In re Tucson Indus.*

*Partners,* 129 B.R. 614, 623–24 (B.A.P. 9th Cir.1991), which observed that 11 U.S.C. § 363(c) barred untrammeled use of the rents by the debtor during the period when the funds are in the possession of the debtor. The *Tucson* court concluded:

> From the date bankruptcy is filed, a defaulted bankruptcy estate may not use the rent without moving for such use and demonstrating that the secured creditor is adequately protected. Failing such a showing, *the cash collateral is property of the secured creditor.*

*Tucson Indus. Partners,* 129 B.R. at 625 (emphasis added). Similarly, in *In re Sam A. Tisci, Inc.,* 133 B.R. 857 (N.D.Ohio 1991), a mortgagee with an assignment of rent moved for relief from the stay seven months after the commencement of the debtor's Chapter 11 case. The Chapter 11 case was converted for liquidation under Chapter 7 of the Bankruptcy Code and a trustee in bankruptcy was appointed. The bankruptcy court lifted the stay and allowed the appointment of a receiver to collect rent. Thereafter, the bankruptcy court allowed the debtor's trustee to retain the rent collected prior to the time that the receiver had been appointed. The district court reversed the lower court and held that pursuant to 11 U.S.C. § 363(a) and § 552(b) the mortgagee was entitled to all of the rent collected by the debtor's trustee before the receiver was appointed.

In *In re Miller,* 133 B.R. 882, 886 (Bankr. N.D.Ohio 1991), the court noted that a perfected assignment of rents clause in favor of a mortgagee precludes the debtor from using the assigned rent in the post-petition period without the mortgagee's consent or a court order, notwithstanding that the mortgagee's right to collect the rent first accrued after it moved to sequester the rent.

In *Northport Marina,* Judge Goetz noted that an appropriate motion had not been presented to the court with respect to the issue as to whether or not a debtor is restricted in its use of rents from the time it files or only from the time the secured creditor moves to assert its rights. *Northport Marina,* 136 B.R. at 921. The sole

issue before the court was whether or not the mortgagee had any rights whatsoever in the debtor's post-petition rentals. Judge Goetz concluded that the mortgagee had cash collateral rights in post-petition rents under 11 U.S.C. §§ 363 and 552. *Id.*

Connecticut General had stipulated that the debtor might apply specific amounts from the assigned rents for the maintenance of the real estate from the time the Chapter 11 case was filed. It did not consent to the debtor's use of any excess rents beyond what was stipulated for maintaining the real estate. Accordingly, the debtor may not use such excess cash collateral over Connecticut General's objection unless this court finds that the debtor has established that Connecticut General was adequately protected in accordance with 11 U.S.C. § 363(c)(2)(B) and § 363(c)(3).

To grant the debtor's motion for reargument so as to permit it unrestricted use of the excess cash collateral rents which it collected from the commencement of the Chapter 11 case would fly in the face of 11 U.S.C. § 363(c) and would read this mandate out of the Bankruptcy Code. Manifestly, the district court decision in the *Vienna* case does not support the debtor's position that a debtor is entitled to unrestricted use of assigned rents which are cash collateral up to the time that the secured creditor moves to assert its rights. In holding that the mortgagee was entitled to collect the assigned rent from the time it moved for rent sequestration, the *Vienna* court simply assumed that the debtor had complied with its obligations under 11 U.S.C. § 363(c) until that point. There was no objection by the mortgagee that the debtor failed to segregate and account for any cash collateral in the debtor's possession, as required by 11 U.S.C. § 363(c)(4). Nor was there any argument that the debtor used any of the cash collateral in the post-petition period in any manner inconsistent with the obligations imposed under 11 U.S.C. § 363(c). Therefore, the accumulated post-petition assigned rents in the *Vienna* case continued to be subject to the mortgagee's perfected lien and could not be used by the debtor without the mortgagee's consent unless the court, after notice and a hearing, authorized such use in accordance with 11 U.S.C. § 363(c)(2)(B).

The summary judgment motion which was before the district court in the *Vienna* case addressed the chronological point at which the mortgagee was entitled to enforce its right to collect the assigned rent. Having determined that the mortgagee's motion for rent sequestration triggered the mortgagee's rent collection right, the *Vienna* court then remanded the matter to the bankruptcy court where the parties could litigate the debtor's right to use any portion of the cash collateral in the context of the mortgagee's right to receive adequate protection for such use, as authorized under 11 U.S.C. § 363(c).

The *Vienna* case is not inconsistent with this court's previous ruling in the instant case that the debtor may use the assigned rents, which are Connecticut General's cash collateral, only in accordance with the stipulation between the parties and the adequate protection provisions contained therein for such use. The excess rents over and above the amount necessary to operate the real estate were not covered by a cash collateral order, nor was adequate protection of Connecticut General's interests determined as a condition for the debtor's use of such excess rents. Therefore, Connecticut General is entitled to receive the excess funds as collateral for its secured claim. The *Vienna* case is not in conflict with this point. Accordingly, the debtors' motion for the entry of an order pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59 is denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. § 157(b)(2)(E).

2. The debtor has not cited any additional authority for amending this court's previous order dated February 14, 1992, which required the debtor to turnover to Connecticut General all the assigned rents which it collected from the commencement of this Chapter 11 case, in excess of the amounts to be used by the debtor to maintain the debtor's real estate, in accordance with the cash collateral stipulation entered into between the parties and approved by this court.

3. The debtor's motion for the entry of an order pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59 is denied.

IT IS SO ORDERED.