**In re REALTY SOUTHWEST ASSOCIATES, Debtor.**

**Bankruptcy No. 92 B 20612.**

United States Bankruptcy Court, S.D. New York.

May 18, 1992.

Blum & Henin, New York City, for debtor.

Battle Fowler, New York City, for Continental Bank, Nat. Ass'n, as Trustee.

## DECISION ON MOTION FOR AN ORDER REQUIRING DEBTOR TO SEGREGATE AND DELIVER CASH COLLATERAL

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Continental Bank, National Association ("Continental"), as a trustee for a trust fund, seeks an order requiring the Chapter 11 debtor, Realty Southwest Associates, to segregate and account for rents which constitute cash collateral of Continental pursuant to 11 U.S.C. § 363(c)(4) and to deliver such cash collateral to Balcor Real Estate Finance, Inc. ("Balcor"). Balcor is the sole beneficiary of the trust fund and the servicing agent for the first mortgage under which Continental claims certain rents as cash collateral.

The debtor opposes the motion on several grounds. First, the debtor claims that a complaint is required where a creditor seeks a return of cash collateral rather than requiring the debtor to segregate and account under 11 U.S.C. § 363, which can be accomplished by motion. Second, although the debtor concedes that it is only using a portion of the cash collateral to service debt on its second mortgage, the debtor argues that it is entitled to hold the excess cash collateral in escrow until confirmation or other order of this court. Third, the debtor claims that Continental is adequately protected because of a substantial equity cushion in the properties constituting the collateral and because it is holding the cash collateral in a separate, interest bearing account. Fourth, the debtor believes that Continental is adequately protected because the debtor's tenant is paying all taxes and insurance, and providing all repairs and maintenance with respect to the properties. Finally, the debtor contends that excess cash collateral should not be paid to either Balcor or Continental because the debtor has a pending adversary proceeding against Balcor in which it has asserted substantial claims.

## FINDINGS OF FACT

1. On March 30, 1992, the debtor filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in management and possession of its property and business in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor owns nine commercial properties (the "Properties") located in six states, Arizona, Indiana, Kansas, Kentucky, Tennessee and Texas. Each of the Properties is leased and occupied by Stone Container Corporation ("Stone") pursuant to various leases.

3. The debtor's interest in the Properties is its sole asset. The debtor receives rent in the aggregate amount of $291,000.00 under the leases with Stone. Approximately $170,000.00 is payable to the first mortgagee and approximately $37,000.00 is payable to the second mortgagee. The balance, $84,000.00, is retained by the debtor.

4. On April 3, 1992, Balcor, a real property mortgage lender, filed, and this court signed, an order shortening the time on its

motion to segregate cash collateral. That order scheduled a hearing on Balcor's motion for April 7, 1992, at which time the court adjourned the motion to April 27, 1992. In its motion, Balcor sought an order requiring the debtor to segregate and account for certain rents that constituted its cash collateral and prohibiting the debtor from using its cash collateral without its consent or until the court authorized such use pursuant to 11 U.S.C. § 363(c)(2).

5. Balcor's attorneys, in its motion to segregate, noted that they received the documents relating to the First Mortgage Loan from Balcor the same morning they presented their order shortening time. Although there was insufficient time to review the documents, Balcor filed its motion to segregate to preserve the *status quo* and to avoid dissipation of its cash collateral.

6. Pending the adjourned hearing, the court entered an order dated April 13, 1992, which directed the debtor to segregate and hold in escrow all rents derived from the Properties, except that the debtor was permitted to use approximately $37,000.00 of the rents to pay the April 15, 1992 installment of debt service due to the holder of the second mortgage covering the Properties. The court allowed this payment to the second mortgagee pending the adjourned hearing to prevent the debtor from defaulting on the second mortgage. On April 15, 1992, the debtor received rent from Stone and such monies are presently in a segregated interest bearing account.

7. On April 22, 1992, Continental filed a motion in which it alleges that it is the holder of the first mortgage on the Properties and that Balcor is the servicer of that mortgage.

8. Continental alleges that it is the successor by a duly recorded assignment of all of Balcor's rights under the documents securing the first mortgage. Continental seeks to "amend and restate" the motion, thereby replacing Balcor. Continental claims that it was not advised until after

the filing of the original motion by Balcor that Balcor had assigned to Continental its record interest in the first mortgage and the property securing that mortgage. The April 27, 1992 hearing was adjourned to May 7, 1992, at which time this court heard Continental's motion.[1]

9. On or about December 30, 1985, the debtor and Southwest Forest Industries, Inc., which was succeeded in interest by Stone, entered into a contract of sale pursuant to which the debtor purchased from Stone and simultaneously leased back to Stone the Properties. Each lease is a triple-net commercial lease in that the rent is net to the landlord, the debtor, because Stone, the tenant, is obligated to pay all expenses relating to the Properties, including taxes, insurance, maintenance and repairs. Stone continues to occupy the Properties in the ordinary course of its business.

10. In exchange for the Properties, the debtor signed a series of promissory notes in favor of Stone totalling $23,000,000.00, of which $17,500,000.00 was secured by a first mortgage on the property and $5,500,-000.00 of which was secured by a second mortgage.

11. On June 30, 1986, Balcor refinanced the loan to the debtor by making a first mortgage loan payment to Stone in the amount of $18,500,000.00, thereby repaying the first mortgage in full. Balcor also made a $2,000,000.00 payment to Stone, reducing the second mortgage to $3,500,-000.00, the maturity date of which was extended to June 30, 2001. This refinancing was evidenced by a promissory note for $18,500,000.00 and secured by first mortgages and deeds of trust on the Properties dated June 30, 1986 and assignment of leases and rents also dated June 30, 1986.

12. Pursuant to the Assignment of Rents, the debtor granted Balcor a security interest in all of the Properties' present and future rents, issues, profits under present or future leases or subleases, and all present and future leases and subleases.

---

**1.** This opinion refers to the moving party as Continental for simplicity. Such reference should not be interpreted as this court's having allowed Continental to substitute itself for Balcor, an issue this court need not resolve.

The Assignment of Rents was to take effect upon a default under the mortgage.

13. In connection with the refinancing, Balcor and Stone entered into nine subordination agreements, one for each of the Properties, dated June 30, 1986, under which Stone's debt was subordinated to Balcor's debt. Therefore, Stone became the second mortgagee on the Properties.

14. On August 15, 1990, Balcor entered into a trust agreement with Continental, evidenced by a written assignment, pursuant to which Balcor transferred its first mortgage interest in the Properties to Continental as trustee for the sole benefit of Balcor. Under the trust agreement, Balcor retained the right to service the loan it made to the debtor in connection with the first mortgage.

15. The first mortgage securing the debtor's promissory note to Balcor matured on July 1, 1991. The debtor and Balcor entered into a series of agreements under which Balcor agreed not to exercise its rights. The last of the agreements expired on March 31, 1992.

16. Pursuant to a written letter agreement dated June 11, 1991, Balcor and the debtor agreed to discuss a modification of the mortgage loan on condition that all settlement negotiations and written communications regarding the loan shall be deemed inadmissible in court and shall not diminish the lender's rights.

17. Thereafter, the parties entered into a written letter agreement dated June 28, 1991, wherein Balcor agreed to forbear from exercising its rights and remedies under the first mortgage on account of the debtor's failure to repay the loan in full at maturity. Balcor's forbearance was conditioned on the parties negotiating and agreeing to a modification of the final mortgage by July 19, 1991. It was made clear in the forbearance agreement that Balcor did not waive it rights under the matured first mortgage and that its forbearance to exercise its rights under the matured mortgage should not be regarded as a modification or extension of that mortgage. This point was expressed in the July 28, 1991 forbearance agreement as follows:

4. This Letter Agreement in no way modifies, amends, or constitutes a waiver by Lender of, any of the terms and provisions of the Loan Documents or a forbearance by Lender from the exercise of any rights and remedies under the Loan Documents and any applicable laws (other than Lender's agreement to forbear as provided hereinabove on account of Borrower's failure to repay the Loan in full on the Maturity Date) and Borrower and Lender hereby agree that the Loan Documents remain unmodified and all terms and conditions thereof remain in full force and effect. Borrower does hereby reaffirm each and every covenant, condition, obligation and provision set forth in the Loan Documents.

18. The parties continued their negotiations with the result that they entered into a supplemental letter agreement dated July 19, 1991, wherein Balcor again agreed to forbear from exercising its rights under the matured first mortgage for an additional period not to continue beyond October 17, 1991. Thereafter, by letter agreement dated October 17, 1991, the parties agreed to an additional thirty days of forbearance by Balcor. Thereafter, the parties again entered into a further supplemental letter agreement dated November 16, 1991, whereby Balcor agreed to forbear from exercising its rights and remedies under the matured first mortgage for an additional sixty days terminating on January 15, 1992 under the same conditions as expressed in the previous supplemental forbearance agreements. By supplemental letter agreement dated January 15, 1992, the parties extended the forbearance period to March 15, 1992. Finally, on March 15, 1992, the parties entered into a sixth supplemental letter agreement extending the forbearance period an additional sixteen days to March 3, 1992, under the same conditions as contained in the previous forbearance agreements.

19. On March 30, 1992, one day before the expiration of the fifth forbearance period, the debtor filed its Chapter 11 petition with this court. The debtor and Balcor never entered into a written modification of

the matured first mortgage, apart from the five supplemental forbearance agreements in which Balcor agreed to forbear from exercising its rights and remedies under the matured first mortgage so that the parties could attempt to negotiate a written modification of the loan.

20. Because the parties failed to execute a written modification of the first mortgage loan, and in view of the fact that the five supplemental forbearance agreements do not constitute such modification, it follows that the debtor is in default under the matured first mortgage.

21. Continental has presented prima facie evidence that its first mortgage has been duly recorded and perfected in the six states where the Properties are located. The debtor has not rebutted this proof. Accordingly, Balcor has a perfected interest in the rents attributable to the Properties, which constitute Balcor's cash collateral under the first mortgage.

22. Under the terms of the forbearance agreements, in each month following July 1, 1991 until the commencement of the case, Balcor received payment directly from Stone of such portion of its monthly rental payment to the debtor as is equal to the monthly interest owing on the first mortgage. This amounted to approximately $168,547.00, representing interest on the $18,500,000.00 principal of the first mortgage note at the non-default rate. As of the date of the filing, Balcor no longer received payments either from Stone or the debtor on the first mortgage.

23. At the hearing on May 7, 1992 and in its opposition to the motion, one of the debtor's three partners, Barry Lang, valued the Properties at $32,000,000.00 and therefore claimed an equity of $19,500,-000.00. *See Affidavit of Barry Lang,* at 12. This valuation went unrefuted.

24. On March 30, 1992, the debtor filed an adversary complaint in this court against Balcor. The debtor's complaint states causes of action for breach of agreement and willful and deliberate wrongful acts and seeks punitive damages.

25. The debtor conceded at the hearing that it was not using the cash collateral, except to pay Stone, the second mortgagee.

## DISCUSSION

This court once again is asked to resolve a dispute involving an assignment of rents clause and the rights of a secured creditor pursuant to 11 U.S.C. § 363. This case, however, is unusual for several reasons. First, the collateral is generating income sufficient to service all of the mortgage debt with funds also remaining for the debtor. Second, the creditor, Continental, seeks return of that portion of its cash collateral over and above the payments to the first and second mortgagees, while the debtor concedes that it is not using the cash collateral, except to pay the second mortgagee. Usually, there is no excess of funds available because the debtor needs all funds available to maintain the property. Here, maintenance of the Properties is unnecessary because of the triple-net leases between the debtor and Stone.

### Scope of Section 363

The first issue raised by the debtor is whether a creditor seeking a return of cash collateral may do so by filing a motion pursuant to 11 U.S.C. § 363 or whether such a request must be made by adversary complaint pursuant to Bankruptcy Rule 7001. The debtor argues that section 363 does not require a debtor to return cash collateral; only segregate it and account for it. The debtor argues that such relief is outside the scope of section 363 and is instead a cause of action for money or reclamation which requires a complaint.

Section 363(c)(2) provides that a debtor

may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease

in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

■ Under section 363(c)(4), the debtor "shall segregate and account for any cash collateral in [its] possession, custody, or control." 11 U.S.C. § 363(c)(4). There is nothing in section 363 authorizing a court to compel a debtor to return cash collateral. Because section 363 does not authorize a court to compel return of a creditor's cash collateral, section 363(e) requires that the debtor give the creditor adequate protection in exchange for use of the creditor's cash collateral. The return of cash collateral is relief that is properly brought by an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001 which states:

> An adversary proceeding ... is a proceeding (1) to recover money or property, ... (2) to determine the validity, priority, or extent of a lien or other interest in property, ... (9) to obtain a declaratory judgment relating to any of the foregoing....

Fed.R.Bankr.P. 7001(1), (2) & (9). *In re Ledgemere Land Corp.*, 116 B.R. 338, 340 (Bankr.D.Mass.1990). In fact, this court is unaware of any reported case in which a court required a debtor to return cash collateral when a creditor made a motion pursuant to section 363.

■ As a practical matter, the return of cash collateral may be accomplished on a motion pursuant to section 363 when the debtor and the creditor stipulate to the return. *See In re White Plains Development Corp.*, 136 B.R. 93, 95 (Bankr. S.D.N.Y.1992). Although the creditor in that case also sought return of cash collateral by filing a "Motion for Turnover of Rents," [2] the court was only asked to decide if such a motion "was a sufficient affirmative act to trigger its right to enforce the assignment of rents clause in the

mortgage." *Id.* The debtor did not question the creditor's right to seek relief by motion rather than complaint, nor did the debtor question whether default had occurred or whether the creditor had perfected its assignment of rents. The court did not direct a reclamation based on the creditor's motion, but instead, the parties stipulated to the return of the cash collateral over and above the expenditures that related to the maintenance of the property.

■ In the present case, the debtor contends that Continental is not perfected and that default has not occurred. However, the evidence does not support the debtor's position. The debtor concedes that it is segregating and accounting for all cash collateral, except that which it is paying to the second mortgagee as debt service. Requiring the debtor to segregate and account is the only relief Continental may obtain pursuant to section 363. The fact that the court does not address Continental's motion for reclamation, or return of the cash collateral, does not prejudice Continental from seeking that relief pursuant to an adversary complaint.

The debtor also contends that Continental may not replace Balcor as the moving party by filing an amended motion. The only difference between Balcor's motion and the amended motion filed by Continental is that Continental seeks a return of the excess cash collateral. Because Continental may not seek a return of its cash collateral under 11 U.S.C. § 363 by motion, and because the debtor was on notice of a motion, either from Balcor or Continental, which would require it to segregate and account for cash collateral, the court need not address the debtor's argument as to the substitution of parties because the debtor suffered no prejudice.

### Use of Cash Collateral

■ Cash collateral may not be used by a debtor in possession without satisfy-

---

2. This court used the term "turnover" in the *White Plains* case because the creditor entitled its motion as a "Motion for Turnover of Rents." However, the term "turnover" is a term of art in bankruptcy. Pursuant to 11 U.S.C. § 542, "turnover" involves an action by the debtor or trustee to recover money or property to the estate.

Such an action must be accomplished by adversary proceeding. Here, the relief sought, if granted, would lead to funds leaving the debtor's estate and is better characterized as an action for reclamation as in 11 U.S.C. § 546(c), which also must be instituted by an adversary complaint.

ing the requirements of 11 U.S.C. § 363(c)(2). *In re White Plains Development Corp.,* 136 B.R. 93, 95 (Bankr. S.D.N.Y.1992). The debtor is required by the terms of 11 U.S.C. § 363(c)(4) to segregate and account for any cash collateral in its possession, custody or control as of the date the debtor filed its Chapter 11 petition pursuant to 11 U.S.C. § 363(c). *Id.* at 95. Rents from real property which are subject to a properly recorded assignment of rents constitute cash collateral if they are subject to a security interest within the meaning of 11 U.S.C. § 552(b). *In re Vienna Park Properties,* 136 B.R. 43, 53–54 (S.D.N.Y.1992).

The debtor believes that it should be entitled to use the monies generated from the debtor's business and property to service the debt on the second mortgage and that the excess of such monies should be held by the debtor pending confirmation of a plan of reorganization or further order of this court. The debtor argues that Continental is adequately protected because Stone is paying all taxes, insurance and providing all repairs and maintenance with respect to the Properties and because the debtor is holding all cash collateral in a segregated, interest bearing account. Moreover, the debtor states that there is a substantial equity cushion in the property. Finally, the debtor contends that no monies should be paid to either Balcor or Continental pending the resolution of the debtor's adversary proceeding against these entities because of the debtor's substantial claims against Balcor.[3]

■ Continental asserts that all of the monthly rental payments by Stone constitute cash collateral within the meaning of 11 U.S.C. § 363(a). Because the debtor concedes that it is segregating and accounting for this cash collateral, the court must decide whether the debtor may continue to pay the second mortgagee, Stone, without paying the first mortgagee, Continental, and whether the debtor has provided ade-

quate protection to Continental pursuant to 11 U.S.C. § 363(e). With regard to the former, the debtor may no longer use the first mortgagee's cash collateral to pay debt service on the second mortgage without servicing the debt on the first mortgage. The court only permitted that arrangement pending the resolution of this motion so that the debtor would not be in default as to the second mortgagee. The debtor may no longer wish to pay debt service to the second mortgagee. However, the debtor must suffer all of the consequences of default as to either mortgage. The next installment of debt service to the second mortgagee is due on May 15, 1992. Therefore, the debtor must decide whether it will pay debt service on either both mortgages or neither of the mortgages by May 25, 1992, at which time it will be responsible for the May 15, 1992 payment should it choose to service both mortgages.

■ The substantial equity cushion, the evidence for which was uncontroverted, also provides Continental with the requisite adequate protection pursuant to 11 U.S.C. § 363(e). *See In re WRB West Associates Joint Venture,* 106 B.R. 215 (Bankr. D.Mont.1989); *In re McCombs Properties VI, Ltd.,* 88 B.R. 261 (Bankr.C.D.Cal.1989). "Adequate protection" is a question of fact because it has as its linchpin the concept of value, and therefore is determined on a case-by-case basis. *Martin v. United States (In re Martin),* 761 F.2d 472, 474 (8th Cir.1985). Continental has not offered any evidence that the property is diminishing in value. As noted earlier, should the debtor use any cash collateral, it must service the debt on the first mortgage.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E).

---

**3.** The court notes that the debtor has not sought to amend its adversary complaint to include Continental. Therefore, it is unclear whether Continental should be precluded from receiving the return of its cash collateral because its servicing agent for the mortgage is a defendant in an adversary proceeding brought by the debtor.

2. Continental may not seek return of its cash collateral by filing a motion pursuant to 11 U.S.C. § 363 because section 363 may only be used to require the debtor to segregate and account for cash collateral, not for a reclamation of cash collateral. Therefore, Continental's request for a reclamation of the cash collateral is denied.

3. The debtor may no longer pay debt service to the second mortgagee without servicing the debt on the first mortgage. If the debtor no longer wishes to pay debt service to the first mortgagee, then it may not pay debt service to the second mortgagee. The next installment of debt service to the second mortgagee is due on May 15, 1992. Therefore, the debtor must decide whether it will pay debt service on either both mortgages or neither of the mortgages by May 25, 1992, at which time it will be responsible for the May 15, 1992 payment should it choose to service both mortgages.

4. Continental is adequately protected pursuant to 11 U.S.C. § 363(e) because of the substantial equity cushion in the Properties and because the debtor is segregating and accounting for all cash collateral.

SETTLE ORDER ON NOTICE.